# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Appeal Upon Remand from the Supreme Court of Tennessee

## STATE OF TENNESSEE v. LARRY EDWARD MOORE, JR.

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2007-A-514     Monte Watkins, Judge**

**No. M2010-02141-CCA-RM-CD - Filed November 16, 2011**

Defendant, Larry Edward Moore, Jr., was convicted of carjacking, a Class B felony and was sentenced to serve thirty (30) years as a Range III, career offender. This Court affirmed the conviction and sentence in *State v. Larry Edward Moore, Jr.*, No. M2008-00703-CCA-R3-CD, 2010 WL 457493 (Tenn. Crim. App., filed Feb. 10, 2010) (hereinafter "*Moore I*"). From that judgment, Defendant filed an application for permission to appeal to the Tennessee Supreme Court pursuant to Tennessee Rule of Appellate Procedure 11. In his application, Defendant presented only one specific issue, which is set forth below. In its order concerning the Rule 11 application, the Supreme Court ordered a supplementation of the record on appeal. The Supreme Court also remanded the case to this Court for reconsideration, in light of the supplemental record, of Defendant's "argument that the trial court erred in not redacting from [the supplemented exhibit] certain portions of [Defendant's] statement to police." Upon reconsideration of Defendant's "redaction" issue, which we initially held was waived for multiple reasons, we conclude the trial court erred, but the error was harmless. Accordingly, we again affirm the judgment of the trial court.

**Tenn. R. App. P. Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

Dawn Deaner, District Public Defender; Emma Rae Tennent, Assistant Public Defender; Ginny Flack, Assistant Public Defender; and Katie Weiss, Assistant Public Defender, Nashville, Tennessee, for the appellant, Larry Edward Moore, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Victor S. (Torry) Johnson III, District Attorney General; Deborah Housel, Assistant District Attorney General; and Latasha Alexander, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

**I. FACTUAL AND PROCEDURAL BACKGROUND**

**Factual Background**

The facts were set forth as follows the first time this Court considered this case:

Alysia Blackburn, the victim, testified on December 27, 2006, she went to a jewelry store on Gallatin Road at approximately 4:15 p.m. to inquire about adjusting a bracelet she had received as a birthday present the day before. The victim left the engine to her grey 1999 Nissan Altima running while she went into the store. From inside the store, the victim observed Defendant walk by and look at her vehicle, so she went outside, turned the engine off, and locked the vehicle. The victim returned to the store, and Defendant entered the business as she was talking to the store's owner, Howard Lane. Defendant asked Mr. Lane if he could use Mr. Lane's telephone to call his wife because his vehicle would not start. When Defendant was unsuccessful in reaching his wife, the victim asked Defendant if she could help, and Defendant responded, "Yeah." The victim and Defendant got into the victim's Altima, and Defendant directed her to drive to a house on Riverwood Drive. The victim said that Defendant told her that he "really appreciate[d] it." The victim stated that she was "just being nice" because she had previously been in a similar situation.

The victim pulled into the driveway indicated by Defendant and began to feel uneasy. The victim stated that Defendant suddenly struck her several times in the face. The victim struggled with Defendant as he attempted to move from the passenger seat to the driver's seat. The victim reached for her purse in the backseat, and Defendant struck her again. The victim stated that she gave up at that point and ceased struggling. She got out of the Altima, and Defendant drove off.

Eugene Skaggs came out of his house and asked the victim if she was all right. The victim said that she was crying, and she told Mr. Skaggs that Defendant had stolen her vehicle. The victim stated:

[a]nd they kept staring at me, and I'm like, "Is my face messed up?" And he was, like, "Yes, ma'am." So that really

made me cry. And I knew that my family [was] going to be upset because I tried to help somebody out.

The victim said that Mr. Skaggs had trouble understanding her because her face was swollen. Mr. Skaggs called the police and the victim's family. The victim was transported to the hospital by ambulance, and the emergency technician was concerned that the victim's jaw was broken. The victim told police officers that Defendant's vehicle was parked at the jewelry store. The victim also told them that her purse was in her vehicle, and it contained, among other items, $212, two cell phones, and a debit card.

The records for the victim's cell phone were introduced as an exhibit at trial and showed that an outbound call was made with the victim's cell phone at 5:22 p.m. on December 27, 2006. The victim stated that she did not recognize the telephone number which received the call. The victim said that she identified Defendant as the perpetrator from a photographic lineup on December 27, 2006.

The victim stated that her jaw was not broken, but her face was bruised and swollen for approximately one and one-half weeks, and people had difficulty understanding her when she tried to speak. The victim said that she never recovered her Altima or any of the items in the vehicle. The victim stated that she did not give Defendant permission to take her vehicle.

On cross-examination, the victim acknowledged that she did not tell the investigating officers that she observed Defendant looking at her vehicle before he entered the store. The victim stated that she did not report the theft of the credit cards to her bank and acknowledged that she was never notified that the credit cards had been used. The victim said that Defendant told Mr. Lane that the alternator on his vehicle was not working, and Mr. Lane and Defendant discussed the location of the nearest car parts store. The victim acknowledged that Defendant did not make any threatening remarks on the drive to Riverwood Drive, and she described him as "nice."

Mr. Skaggs testified that he lived at 1140 Riverwood Drive. Mr. Skaggs stated that he was working at his computer on December 27, 2006, when he noticed on his computer screen the reflection of a vehicle pulling into his driveway. Mr. Skaggs did not recognize the vehicle and thought the driver would turn around. Mr. Skaggs observed a man and woman in the

vehicle and believed at first that the man was slapping the woman playfully. Mr. Skaggs then realized that the man was striking the woman, and he went outside. Mr. Skaggs said that the man got out of the vehicle and pulled the victim out. The man then got back in the vehicle and drove off. Mr. Skaggs said that he gave the victim ice for her face and called 911. Mr. Skaggs stated that he was unable to identify the man who drove off in the victim's vehicle.

Howard Lane testified that he owned a jewelry store on Gallatin Road. Mr. Lane knew the victim because she had visited the store before the incident. Mr. Lane said that the victim stopped by the store on December 27, 2006, to check on a bracelet's repair. Mr. Lane said that Defendant entered the store while he was talking to the victim and asked to use Mr. Lane's telephone because his vehicle would not start. Mr. Lane handed Defendant his cell phone, but Defendant was not able to reach anyone. Mr. Lane described Defendant as "cordial," and he, the victim, and Defendant conversed between ten and fifteen minutes. Mr. Lane said that the victim did not have any injuries to her face while she was in the store. Mr. Lane later identified Defendant from a photographic lineup as the man who left his store with the victim on December 27, 2006.

Officer Jason L. Smith, with the Metro Nashville Police Department, stated that the victim was "crying and very afraid" when he arrived at the residence on Riverwood Drive. Officer Smith observed a contusion on the victim's cheek which was bleeding. Based on the information provided by the victim and Mr. Skaggs, Officer Smith drove to the jewelry store on Gallatin Road. He located a van matching the victim's description and recorded the vehicle's VIN, which he relayed to Detective Michael Windsor with the Metro Police Department. On cross-examination, Officer Smith acknowledged that on his incident report, he indicated that the victim had sustained an "apparent minor injury."

Detective Windsor interviewed the victim at the hospital. Detective Windsor testified that the victim had a large amount of swelling around her cheek and a small laceration in the middle of the swelling. Detective Windsor identified the owner of the van parked near Mr. Lane's jewelry store through its VIN. Detective Windsor developed Defendant as a suspect based on the information received from the vehicle's owner. Detective Windsor prepared a photographic line-up, and the victim identified Defendant as the perpetrator.

-4-

Detective Windsor arrested Defendant on December 28, 2006. Defendant was read his *Miranda* rights and executed a written waiver of those rights. A redacted version of the videotape of Defendant's interview was played for the jury. Detective Windsor stated that he determined that the outbound call made by the victim's cell phone on December 27, 2006, at 5:22 p.m. was made to Defendant's home telephone number.

*Moore I*, 2010 WL 457493, at *1-3, slip. op. at 2-4.

## Procedural Background

Prior to addressing Defendant's challenge to the sufficiency of the evidence argument in *Moore I*, we noted the problem with trial exhibit 6, which purported to be a VHS copy of Defendant's statement to police which contained redactions ordered by the trial court upon motion of Defendant. However, the trial court did not order all of the redactions requested by Defendant. Exhibit 6 was played for the jury. In *Moore I* we stated the following:

Before considering Defendant's challenge to the sufficiency of the convicting evidence, we observe that we were unable to review the redacted videotape of Defendant's statement to the police which was introduced as Exhibit 6 at trial and played for the jury. The video tape would only play in "fast forward" mode making it impossible to follow the interview. We glean from the record that certain portions of Defendant's statement, primarily those concerning Defendant's comments about his prior convictions, imprisonment, and drug use, were redacted before the videotape was introduced as an exhibit at trial. Defense counsel was aware that there was a problem with the videotape as reflected in her motion filed with this Court on December 31, 2008. Within this motion, defense counsel informed this Court that when she attempted to view Exhibit 6 after trial, she was unable to play back the recording, but she did not provide any clarification as to the type of problem she encountered. Defense counsel stated, however, that she was able to produce a viewable DVD copy of the videotape containing the redacted version of Defendant's statement. Defense counsel explained that "[c]oncerned that this Court and the Attorney General may face similar difficulties playing the VHS tape, [she was] seeking to have the trial court certify the DVD as a supplemental exhibit to the record in this case, pursuant to T.R.A.P. 24(e)." There is no indication, however, that defense counsel followed through with this intention. In her brief, defense counsel said that she was unable to include

-5-

the DVD in the record on appeal because the State refused to stipulate to the accuracy of the DVD.

*Moore I*, 2010 WL 457493, at *4, slip. op. at 5.

After concluding in *Moore I* that the evidence was sufficient to sustain the conviction of carjacking, this Court addressed the evidentiary issues raised by Defendant, including the redaction issue related to Exhibit 6. Defendant's basis for objecting to certain portions of the statement that were not redacted was that the unredacted portions were not relevant. We summarized the redaction issue as follows in *Moore I*:

A. Redactments from Videotaped Statement

Defendant argues that the trial court erred in not redacting certain comments from his videotaped statement which he made about his wife during the interview. Defendant contends that such statements were not relevant to a material issue at trial and were prejudicial because they cast him in a bad light before the jury.

The trial court conducted a pre-trial hearing concerning Defendant's request for redactions, and the State agreed to redact Defendant's comments about his prior criminal history and his use of drugs, and Detective Windsor's comments about the potential charges Defendant was facing.

. . . .

**After further discussion, the trial court stated that it would make a final ruling on the day of trial but it does not appear from the record that the trial court ruled on Defendant's motion. The State introduced Defendant's redacted videotaped statement during Detective Windsor's direct examination as Exhibit 6 without further objection by Defendant. Prior to playing the videotape for the jury, the State requested a bench conference in the presence but out of the hearing of the jury which was not transcribed. The videotape was then played, again without further objection by Defendant.**

. . . .

. . . it does not appear that the trial court made a definitive ruling on the admissibility of the challenged statements before the videotape of

-6-

Defendant's redacted statement was played for the jury, nor does the record indicate that Defendant renewed his objection prior to the playing of the videotape to the jury. Once a trial court "makes a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal." Tenn. R. Evid. 103(a)(2). As this Court has cautioned, however, "where the 'issues are only tentatively suggested or the record only partially and incompletely developed in connection with a motion in limine, . . . [c]ounsel necessarily take some calculated risks in not renewing objections.[']" *State v. Alder*, 71 S.W.3d 299, 302 (Tenn. Crim. App. 2001) (quoting *State v. McGhee*, 746 S.W.2d 460, 462 (Tenn. 1998)); *see also* Tenn. R. App. P. 36 (a) (providing that "[n]othing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error"). Also hindering our review is the fact that we do not have a reviewable copy of the redacted version of Defendant's statement to the police, and we, therefore, do not know which portions were redacted and which were not. When the record is incomplete on an issue or does not contain the proceedings relevant to an issue, this court is precluded from considering the issue. Tenn. R. App. P. 13(c); *Miller*, 737 S.W.2d at 558; *State v. [Griffith]*, 649 S.W.2d 9, 10 (Tenn. Crim. App. 1982); *State v. Hoosier*, 631 S.W.2d 474, 476 (Tenn. Crim. App. 1982). Moreover, because the record does not clearly establish what occurred in the trial court, Defendant may not find relief under a plain error analysis. Tenn. R. App. P. 36(b); *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994). Based on the foregoing, we conclude that Defendant has waived appellate review of this issue and is not entitled to relief.

*Moore I*, 2010 WL 457493, at *5-7, slip. op. at 7-9 (emphasis added).

**Procedural Background After *Moore I* was Filed**

Defendant filed a timely motion to rehear, which was denied. Subsequently, Defendant filed his application for permission to appeal to the Tennessee Supreme Court. As noted above, Defendant presented only one issue in his Rule 11 application, which is set forth herein as stated in his application:

-7-

## QUESTION PRESENTED FOR REVIEW

### I

In fulfilling the demands of Rule 24(a) of the Tennessee Rules of Appellate Procedure, do parties seeking appellate review have a duty to ensure that audio-visual recordings included in the record are compatible with the playback devices used by the appellate Courts?

Interestingly, Defendant noted in his Rule 11 application that,

The defendant recognizes that the issue now presented could have been avoided had defense counsel successfully supplemented that appellate record with the DVD recording she had made from the problematic videotape. However, [the defendant] implores this Court to clarify the duties imposed by T.R.A.P. 24(a) in such circumstances.

Attached to, and in support of, Defendant's Rule 11 application is the Affidavit of Brad Freeman, which affidavit states:

## **AFFIDAVIT**

STATE OF TENNESSEE ]

COUNTY OF DAVIDSON ]

Personally appeared before me the undersigned, a Notary Public, in and for said County and State, Brad Freeman, who having been duly sworn according to law does make oath as follows:

1. I am an Information Systems Application Analyst employed by the Metropolitan Davidson County General Sessions Court.

2. In December, 2008, I was contacted by Assistant Public Defender Emma Tennent, who needed help with a video tape that had been

played during a trial, but which she was unable to review on the VCR equipment in her office.

3. I examined the video tape, and found that the VCR Tape had been played back many times, which will cause the tape to play back poorly over time. Such tapes require play-back equipment with "auto-tracking" to be viewed correctly. To my knowledge, the technology for auto-tracking is a standard feature on most VCR's produced after 2006. The Davidson County Criminal Court courtrooms were equipped with auto-tracking VCR players when the A.A. Birch Building opened in 2006. Because the tape cannot be viewed on a VCR player that lacks the auto-tracking feature, I had to convert the VCR format tape video onto a DVD format, thus allowing the video to be seen correctly.

4. After informing Ms. Tennent of the issue, I recorded the video tape onto a DVD. To make this copy, I used standard, "off the shelf" recording equipment/software available to me in my office.

5. I returned the VCR Tape and DVD to Ms. Tennent in December, 2008.

FURTHER AFFIANT SAITH NOT.


/s/ Brad Freeman
Brad Freeman

Sworn to and subscribed before me this the 22nd day of February, 2010.

      /s/ Jenna B. Young
        NOTARY PUBLIC

      My Commission Expires:      5/22/10

The record indicates that the DVD was not certified by the trial court as a substitute for Exhibit 6. The record also indicates no change in the District Attorney General's refusal to agree to certification of the DVD as a supplemental trial exhibit. Tennessee Rule of Appellate Procedure 24(e) provides that "[a]ny differences regarding whether the record accurately discloses what occurred in the trial court shall be submitted to and settled by the trial court regardless of whether the record has been transmitted to the appellate court." The Supreme Court in this case clearly relied upon another part of Rule 24(e) to order supplementation of the record with the DVD which had been prepared at the sole direction of defense counsel. That provision states that "[i]f necessary, the appellate or trial court may direct that a supplemental record be certified and transmitted."

At the conclusion of his Rule 11 application, and arguably submitted as an alternative ground for relief, Defendant asserted that,

> In *State v. Byington*, 284 S.W.3d 220, 223-224 (Tenn. 2009), this Court ruled that when there is a defect in the record that renders an appellate court unable to consider matters that were considered by the trial court, the appellate court has the authority, pursuant to both T.R.A.P. 24 and T.C.A. § 27-1-128, to order supplementation of the record on remand to the trial court for further proceedings to correct such a deficiency. The defendant thus respectfully suggests that a remedy short of deeming an appellate issue waived was available to the Court of Criminal Appeals upon its discovery that it was unable to review the tape. Indeed, the Court of Criminal Appeals' holding is inconsistent with *Byington* to the extent that he [sic] fails to recognize the authority of the appellate courts to reach down and remedy any irregularities or deficiencies in the content of appellate records. Accordingly, the defendant respectfully asks that, in order to secure uniformity of decision and settlement of an important question of law, this Court grant his application and review the Court of Criminal Appeals' decision pursuant to Rule 11(a)(1) and (2), T.R.A.P.

The Tennessee Supreme Court entered the following order related to Defendant's Rule 11 application:

**ORDER**

Upon consideration of the application for permission to appeal of Larry Edward Moore and the record before us, this Court has determined that the videotape admitted as trial exhibit 6 and included in the record on appeal is now defective and unavailable for review. Therefore, in accordance with Tennessee Rule of Appellate Procedure 24 and this Court's decision in *State v. Byington*, 284 S.W.3d 220 (Tenn. 2009), the defendant is hereby ordered to supplement the record on appeal with a non-defective DVD version of exhibit 6. The supplemental record shall be filed no later than November 8, 2010.

Furthermore, the application for permission to appeal of Larry Edward Moore is granted, and this case is remanded to the Court of Criminal Appeals for reconsideration in light of the supplemental record. Specifically, the Court of Criminal Appeals shall review the non-defective version of exhibit 6 and re-consider on the merits Mr. Moore's argument that the trial court erred in not redacting from exhibit 6 certain portions of Mr. Moore's statement to the police.

It is so ORDERED.

PER CURIAM

## II. ANALYSIS

We will now address on the merits, pursuant to the Supreme Court's order, Defendant's issue regarding redaction of portions of his statement to the police based upon his assertion that the statements are not relevant. In order to properly review this issue, we find it necessary to meticulously set forth what transpired in the trial court regarding the issues.

Defendant did not file any written motion regarding redaction of portions of Defendant's statement to the police. Attached to Defendant's pre-trial motion to compel production of the record of a 911 call is an e-mail from Defendant's counsel to the prosecutor referencing counsel's previous requests for the 911 tape. That e-mail also includes the following: "Also - I'm filing a suppression motion on Mr. Moore's statement - a. [sic] if

-11-

that's denied, there will be redaction issues - have you decided what you [the prosecutor] propose to redact?"

The first mention of the redaction issue during the trial court proceedings was made by the prosecutor, after the hearing on Defendant's motion to suppress the entire statement on constitutional grounds. After the prosecutor brought to the trial court's attention the redaction issue, and the trial court announced that it would rule on Defendant's suppression motion on the morning of the trial, the following transpired:

[PROSECUTOR]: Judge, we do have - - because we don't want the jury to be sitting outside waiting, there are a number of issues, I'm sure, that we're going to disagree on redactions. The State, of course, will redact all of the statements about his prior criminal history that he goes into. That's absolutely no problem. The State will also redact that portion of it, where he discusses his drug use. But, aside from that, I don't see that there - - and I am sure the defendant has something else to say, but if we could - - if they could just give me an idea of what they're talking about and let Your Honor give me some type of instruction on what you think should be - -

THE COURT: All right. Are there areas outside of the prior criminal record and prior drug use that you're seeking redaction on?

In response to the State's and the trial court's inquiries as to what additional portions of the statement that Defendant wanted to be redacted, Defendant's attorneys gave the following specifics:

(1)     "There are other allegations of criminal activity. There are – there is a period where they're discussing [Defendant's] relationship with his wife, which has no business going before the jury."

(2)     "There is a discussion about the nature of his relationship with his wife, and that, frankly, just . . . whether he gets along with his wife or not is completely irrelevant to this incident."

-12-

(3)    "It's a [ ] portion on our transcript page seventeen, where he's, basically, just complaining about his wife 'she's overbearing, I like to party, I like to go out,' things like that that we're just asking that they be taken out because they're just, sort of, negative comments that are just prejudicial. You know, 'just stresses me out,' and all of this –"

(4)    "At the end the detective is discussing that in his opinion the evidence is overwhelming, that all these things – that it's just an open and shut case against [Defendant]. All of that opinion discussion of the detective should be removed."

(5)    "And there is, also, a section where the detective is discussing, 'well, I could have charged you with aggravated' robbery, but I'm not and instead I'm charging you with this and that, and you've clearly done this offense but maybe not this other offense.' All of that opinionated discussion of the detective and his charging decision making should be removed."

The State agreed to redact that portion of the statement where the detective said, in the prosecutor's words, "I could have charged you with this and I could have charged you with that," but declined to agree to redact the other portions of what the detective said. At one point in the proceedings one of Defendant's attorneys told the trial court "we can provide this to the Court – I mean, we can do the obvious redactions and then make our arguments at – you know, if you want."

After the parties had completed their discussions and arguments of proposed redactions, the trial court concluded the redaction issue "hearing" as follows:

THE COURT:          What I can do is this: I mean, this is something that can be dealt with on cross-examination very easily. This matter comes up quite often. And you can ask all of the right questions to show that, you know, "that was just your opinion, Detective, it was not based on fact," or whether - - I don't know whether it was or not, but that can be dealt with through cross-examination.

-13-

> In any event, I'm going to take a look at this matter, make my ruling Monday morning [day of trial] and we'll go from there.

Defendant has not directed our attention to any other place in the transcript where the redaction issue was taken up by the trial court, and we have not found where the redaction issue was even ruled upon by the trial court. Indeed, in his brief filed in this case (Defendant did not file an additional brief on remand), Defendant states, "[a]t the conclusion of the pre-trial hearing [on the redaction issue] the trial court took the matter under advisement. [ ] The record does not reflect that the trial court expressly ruled on the defendant's motion."

Defendant was given ample opportunity to bring to the trial court's attention the fact that it had not ruled on the redaction issue. Just before the trial began on Monday, November 26, 2007, the following proceedings occurred:

| | |
|---|---|
| THE COURT: | All right. First of all, on Mr. Moore's case with respect to the motion to suppress filed and argued last week, the Court took that matter under advisement. After review of that particular matter the Court is going to respectfully deny the motion. The Court will set forth in detail the reasons for the denial of the motion in a written order that will be prepared, but that's how the Court has ruled on that particular matter. |
| | Are there other matters that need to be taken up prior to bringing in the jury panel? |
| [PROSECUTOR]: | No, Your Honor. The State - - we've worked with the Public Defender's Office long enough, especially these two, to know that they know all the rules of evidence and everything else; that they can't bring in any prior bad acts before they've been introduced, or anything such as that, so I'm not concerned with - - they know the rules and if there is something we'll respectfully ask for a jury-out. |

-14-

THE COURT:              Okay.  I know that both sides are very versed in the rules, so with respect to any matters that come up a timely objection would be appropriate.

                        All right.  If we're ready to go we can bring in the jury panel.  Are we ready?

[PROSECUTOR]:           Yes, Your Honor.

[DEFENSE COUNSEL]:      Yes, Your Honor.

After the jury was selected and sworn, the trial court took a recess for lunch.  Upon return after lunch and before the first witness was called to testify, the following transpired:

THE COURT:              The jury received their lunches very late and they just finished.  They're ready to come back.  Any matters that I need to take up prior to the jury coming in?

[PROSECUTOR]:           No, Your Honor.  We're going to have opening statements, then, I anticipate prior to the victim testifying that we'll need a short jury-out.

THE COURT:              Okay.  That's fine.  Any matters from the defense?

[DEFENSE COUNSEL]:      No, Your Honor.

THE COURT:              All right.  Bring them in.

Defendant's statement, Exhibit 6, was played for the jury during Detective Windsor's testimony.  Defendant's counsel made no objection prior to, or during, the time the recording was played.  Afterward, the following transpired:

THE COURT:              General Housel?

[PROSECUTOR]:           Thank you, Judge.  Your Honor, at this time the State asks that the video of the interview with the defendant be admitted into evidence.

-15-

THE COURT:             All right.  Any objection?

[DEFENSE COUNSEL]:   No, Your Honor.

THE COURT:             All right.  Exhibit No. 6.

In his motion for new trial, Defendant made the following grounds for relief regarding the redaction issue:

2.      Additionally, the Court erred by denying Mr. Moore's request for specific redactions in the video-and-audio recording of his statements to the Detective.  He requested removal of:

a.      the Detective's numerous characterizations of the evidence as a strong, excellent case against Mr. Moore.  These remarks were inadmissible opinion, prejudicial to Mr. Moore, and their presentation to the jury was inconsistent to the Tennessee Rules of Evidence, and Mr. Moore's due process and fair trial rights.

b.      the portion of the conversation relating to Mr. Moore's unsatisfactory relationship with his wife.  Likewise, these remarks were inadmissible, irrelevant and prejudicial, and should have been excluded. T[en]n. R. Evid. 404(b), 403, 402.

As stated above, Defendant did not file, or move to file, a supplemental brief after the Supreme Court entered its order on Defendant's Tennessee Rule of Appellate Procedure 11 application.  In his brief on appeal, he argues that the following specific portions of Exhibit 6 should have been redacted based upon his oral motion to redact on relevancy grounds. Again, we note that Defendant has not provided any citation to the recording as to where these objectionable portions of the statement are found.  For specificity and clarity as to what portions of the recording Defendant is referring to, we quote directly from his brief:

(1)     "references the defendant made to his unsatisfactory relationship with his wife."

(2)     "the portions of his [Defendant's] statement wherein he [Defendant] expressed his dissatisfaction with his wife."

(3)     "defendant decried his wife's tendency to find fault with the fact that
        he likes to go out on the town."

(4)     "He [Defendant] stated, 'she'll sit there and cry because I went to a
        party.'"

(5)     "He [Defendant] also complained about the way his wife remembers
        his past faults and throws them back at him when they argue."

(6)     "He [Defendant] indicated that he is willing to be unfaithful in his
        marriage."

No written motion in limine was filed regarding the redaction issue. Defendant concedes that the trial court never made a ruling on the redaction issue. The record is "crystal clear" that Defendant never objected during the trial to the admission of Exhibit 6 based upon the redaction issue. Defendant did not renew presentation of the issue to the trial court at the beginning of the trial proceedings, or during presentation of evidence. As we noted in *Moore I* regarding these aspects of the redaction issue,

> Once a trial court "makes a definitive ruling on the record admitting or
> excluding evidence, either at or before trial, a party need not renew an
> objection or offer of proof to preserve a claim of error for appeal." Tenn.
> R. Evid. 103(a)(2). As this Court has cautioned, however, "where the
> 'issues are only tentatively suggested or the record only partially and
> incompletely developed in connection with a motion in limine, . . . [c]ounsel
> necessarily take some calculated risks in not renewing objections.[']" *State
> v. Alder*, 71 S.W.3d 299, 302 (Tenn. Crim. App. 2001) (quoting *State v.
> McGhee*, 746 S.W.2d 460, 462 (Tenn. 1998)); *see also* Tenn. R. App. P. 36
> (a) (providing that "[n]othing in this rule shall be construed as requiring
> relief be granted to a party responsible for an error or who failed to take
> whatever action was reasonably available to prevent or nullify the harmful
> effect of an error").

*Moore I*, 2010 WL 457493, at *7, slip op. at 8-9.

Notwithstanding the above-cited authority in *Moore I*, the Supreme Court has ordered this court to "review the non-defective version of exhibit 6 and re-consider on the merits [Defendant's] argument that the trial court erred in not redacting from exhibit 6 certain portions of [Defendant's] statement to the police." We have reviewed the non-defective version of Exhibit 6, which as noted above, is a DVD copy of the VHS tape recording of

Defendant's statement to police introduced into evidence without objection by Defendant. The recording of Defendant's interview by the police is approximately one hour long. There is a digital time keeper on the recording which apparently displays the time in military time. At 21:49 on the timer, Defendant made most of the statements which Defendant claims on appeal should have been redacted, based upon the statements not being relevant. These statements have been set forth above, and generally Defendant expressed dissatisfaction with his wife. Later on in the interview Defendant indicated that he could be unfaithful to his wife.

Tennessee Rule of Evidence 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tennessee Rule of Evidence 402 states in part that "[e]vidence which is not relevant is not admissible."

Defendant was charged with carjacking. Defendant's wife was not a victim in the incident; she was not an eyewitness to the incident; she was not a co-defendant. The police did develop Defendant as a suspect based upon tracing Defendant's wife as the owner of the van that Defendant said was "broken down" at the jewelry store.

Discussing this issue in its brief, the State initially takes the position that the trial court did not err by declining to redact the statements. Then the State recognizes that the trial court felt the statements were "irrelevant but not prejudicial." *See Moore I*, 2010 WL 457493, at *1-3, slip op. at 8. Upon this concession, the State asserts this Court "must examine the evidence in light of Tennessee Rule of Evidence 402, which states that '[e]vidence which is not relevant is not admissible. . . .' These portions of the statement were not relevant to any material issue of this case, and thus were subject to exclusion under Rule 402."

We agree with Defendant and the State that the statements which are the subject of this issue are not relevant. They were thus not admissible evidence, and they should have been redacted from the recording shown to the jury. It should not be surprising that multiple statements, made by both a defendant and interviewers during an interrogation that lasts about an hour, could be subject to redaction on relevancy (or other evidentiary) grounds. If evidence is not relevant, the admissibility does not hinge upon whether the evidence is prejudicial. If evidence is not relevant, the evidence is not admissible when a timely objection to its relevance is made.

The prejudicial effect of inadmissible evidence is a factor when the inadmissible evidence is erroneously allowed into evidence and a determination of whether the error is harmless or not must be made. The State asserts the error in this case is harmless. Defendant argues otherwise. We agree with the State.

-18-

There are three categories of trial court error: structural constitutuional error, non-structural constitutional error, and non-constitutional error. *State v. Rodriguez*, 254 S.W.3d 361, 371 (Tenn. 2008). Obviously, a ruling on Defendant's objection to certain evidence based upon its non-relevance is an evidentiary ruling. Our Supreme Court has determined that "an evidentiary ruling ordinarily does not rise to the level of a constitutional violation." *State v. Powers*, 101 S.W.3d 383, 397 (Tenn. 2003) (citing *Crane v. Kentucky*, 476 U.S. 683, 689, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986). The error in the case *sub judice* does not rise to the level of a constitutional violation. Accordingly, "[w]here an error is not of a constitutional variety, Tennessee law places the burden on the defendant who is seeking to invalidate his or her conviction to demonstrate that the error 'more probably than not affected the judgment or would result in prejudice to the judicial process. Tenn. R. App. P. 36(b).'" *Rodriguez*, 254 S.W.3d at 372.

Defendant argues in his brief that the erroneously admitted evidence was not harmless error "when viewed together with the other errors in his case" and that the irrelevant statements were highly prejudicial because they made Defendant "look like a jerk" and "created a risk that the jury improperly convicted the defendant, at least in part, due to negative impressions about him drawn from the manner in which he complained about his marriage." Regarding "other errors in the trial," we note that this Court found no merit to Defendant's other issues on appeal in *Moore I*.

The total length of the objectionable and erroneously admitted statements, which were included in the approximately one hour recording of Defendant's statement, is about one minute. The Supreme Court in *Rodriguez* stated,

> When an appellate court undertakes a harmless error analysis its purpose is to ascertain the actual basis for the jury's verdict. [ ] An inquiry into harmless error does not turn upon the existence of sufficient evidence to affirm a conviction or even a belief that the jury's verdict is correct. [ ] To the contrary, the crucial consideration is what impact the error may reasonably be taken to have had on the jury's decision-making.

*Rodriguez*, at 372.

The evidence of Defendant's guilt was overwhelming enough to be the basis for the jury's verdict. After reviewing the entire record, we conclude that the erroneously admitted evidence had minimal, if any, impact upon the jury's decision to find Defendant guilty of car jacking. Defendant is not entitled to relief in this appeal.

## CONCLUSION

The judgment of the conviction and sentencing in this case is affirmed.

_____
THOMAS T. WOODALL, JUDGE