

# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs January 5, 2017

## STATE OF TENNESSEE v. WILLIE MORGAN

**Appeal from the Criminal Court for Shelby County**
**No. 13-06170      James M. Lammey, Jr., Judge**

_____

### No. W2016-01445-CCA-R3-CD

_____

The defendant, Willie Morgan, was convicted by a Shelby County Criminal Court jury of aggravated robbery, a Class B felony, and was sentenced to a term of eleven years. On appeal, the defendant argues that the evidence is insufficient to sustain his conviction and that the trial court erred in excluding testimony about the victim's compensation fund. After review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and CAMILLE R. MCMULLEN, JJ., joined.

Stephen C. Bush, District Public Defender; Barry W. Kuhn (on appeal), John Zastrow and Joshua Stanton (at trial), Assistant Public Defenders, for the appellant, Willie Morgan.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Tyler B. Parks and Gavin Smith, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

## FACTS

The defendant and a co-defendant, Ashley Proctor, were indicted for aggravated robbery arising from their taking almost $10,000 from the victim at gunpoint on July 28, 2013.

At trial, the victim, Gregory Bernard, testified that he withdrew $10,000 from his credit union in order to purchase a home at 2087 Hubert, as well as another house in the same neighborhood, to remodel and resell for a profit. He elaborated that he began flipping houses after retiring from the City of Memphis Sewer Department and "draw[ing]" $100,000. On July 28, 2013, he went to the Hubert address to obtain a confirmation letter from the seller. While he waited for the seller, the victim sat with some friends under a tree across the street from the house. He knew people in the neighborhood from his job at the sewer department and had hung out there after work for several years. People in the neighborhood knew that he planned to buy the house on Hubert.

The defendant, with whom the victim was acquainted, approached and joined the victim and his friends. The defendant told the victim that Ashley Proctor had asked about him and then called Ms. Proctor from the victim's phone. The victim also spoke to Ms. Proctor and said that he would come by and see her when he finished speaking with his friends. The defendant did not want to wait, so the victim asked his friend, Otis, to drive them. On the way, the defendant asked the victim to stop at a store and buy a beer for him. The victim paid for the beer with cash, pulling the bills from his right pocket as the defendant stood beside him. The victim had $70 or $80 in his right pocket and the "big cash" in his left pocket.

When they arrived at Ms. Proctor's, the victim saw a tall, slim African-American man standing near the driveway. The victim entered the house, visited with Ms. Proctor's grandmother, and then spoke with Ms. Proctor in the hallway. The defendant entered the hallway twice during the victim's five-minute conversation with Ms. Proctor. The first time, the defendant gave Ms. Proctor "a look," which the victim surmised to be "a jealous look." The second time, the defendant mumbled something that the victim could not hear. The victim thought the defendant was acting "funny" or "anxiously."

As the victim prepared to leave, he saw Otis, the friend who had driven him to the house, driving away. The defendant, who was standing near the side of the house in the driveway, reported that Otis was going to the store and would return. As the victim stood on the porch preparing to call Otis, the tall, slim African-American man, whom the victim observed when he arrived, approached from around the corner of the house. The man pointed a handgun at the victim and ordered him to lie down. The victim lay down on the porch, and the man placed the gun against the back of his head. The victim believed that the gunman was about to kill him. As the victim lay face-down on the concrete, he felt the man's feet beside his head and other people moving around him. The victim felt hands simultaneously searching all of his pockets, while the gun was still held to his head. The victim could tell that the hands searching his pockets were different sizes and did not belong to the same person. Approximately $70 was taken from one of

his front pockets, $9800 was taken from his other front pocket, and personal papers and his wallet were taken from his back pockets.

The victim heard "footsteps trotting away, leaving from the front of the house headed toward across the street from the house," so he turned his head and looked. He saw the defendant, Ms. Proctor, and the gunman together, giggling and running into an open field. The victim left the scene, found Otis, and went to the store to call the police. The victim gave the police an initial statement and, several days later, identified the defendant and Ms. Proctor from photographic arrays and gave a typewritten statement. The victim conceded that he did not see the defendant or Ms. Proctor take his property, but he explained:

> I saw body movement and . . . felt the motion of the body of them around my legs moving around. . . . [T]hey was going in my pocket because I know the gunman had a gun. He kept pressing on my head. He ain't got three hands. You know, I know he had help.

He reiterated that he saw the gunman, the defendant, and Ms. Proctor running away together immediately after he was robbed.

Officer Trelise Guest with the Memphis Police Department responded to the robbery call. She spoke with the victim and completed an incident report. She and her partner searched the area for the possible suspects or physical evidence but were unsuccessful.

Johnny Schafer, who was a sergeant with the Memphis Police Department at the time of the offense, spoke with the victim several days after the robbery and prepared photographic arrays, from which the victim immediately identified the defendant and Ms. Proctor. The police did not find a gun, large sums of cash, or the victim's property when they arrested the defendant.

Following the conclusion of the proof, the jury convicted the defendant as charged of aggravated robbery.

## ANALYSIS

On appeal, the defendant argues that the evidence is insufficient to sustain his conviction and that the trial court erred in excluding testimony about the victim compensation fund.

## I. Sufficiency

The defendant first challenges the sufficiency of the convicting evidence, asserting that the victim's "story d[id] not make any sense" and that the victim "did not see the person or persons who robbed him."

In considering this issue, we apply the rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). The same standard applies whether the finding of guilt is predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

A criminal offense may be established entirely by circumstantial evidence. State v. Majors, 318 S.W.3d 850, 857 (Tenn. 2010). It is for the jury to determine the weight to be given the circumstantial evidence and the extent to which the circumstances are consistent with the guilt of the defendant and inconsistent with his innocence. State v. James, 315 S.W.3d 440, 456 (Tenn. 2010). In addition, the State does not have the duty to exclude every other reasonable hypothesis except that of the defendant's guilt in order to obtain a conviction based solely on circumstantial evidence. See State v. Dorantes, 331 S.W.3d 370, 380-81 (Tenn. 2011) (adopting the federal standard of review for cases in which the evidence is entirely circumstantial).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human

-4-

atmosphere and the totality of the evidence cannot be reproduced with a
written record in this Court.

Bolin v. State, 405 S.W.2d 768, 771 (Tenn. 1966) (citing Carroll v. State, 370 S.W.2d
523, 527 (Tenn. 1963)). "A jury conviction removes the presumption of innocence with
which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a
convicted defendant has the burden of demonstrating that the evidence is insufficient."
State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

For the purposes of this case, aggravated robbery is defined as "the intentional or
knowing theft of property from the person of another by violence or putting the person in
fear" that is "[a]ccomplished with a deadly weapon or by display of any article used or
fashioned to lead the victim to reasonably believe it to be a deadly weapon[.]" Tenn.
Code Ann. §§ 39-13-401(a), -402. The identification of a defendant as the perpetrator of
a crime is a question of fact for the trier of fact to determine from the evidence presented
at trial. See State v. Strickland, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993).

In the light most favorable to the State, the evidence shows that the defendant
approached the victim, began discussing Ms. Proctor, and then called Ms. Proctor from
the victim's phone. The victim told the defendant that they would visit Ms. Proctor when
he finished speaking with friends, but the defendant encouraged the victim to leave
immediately and they obtained a ride with one of the victim's friends. When they arrived
at Ms. Proctor's house, the victim noticed the would-be gunman standing in the
driveway. Inside the house, the victim saw the defendant give Ms. Proctor "a look" and
heard him mumble something to her. The victim described the defendant as acting
"funny" or "anxiously." When the victim went outside to leave, the defendant was also
outside by that point. As the victim was preparing to make a phone call, the gunman
approached and ordered him to the ground, held him at gunpoint, and directed him not to
look. The victim felt the gunman standing next to him and holding the gun against his
head, while two other people moved around him and two different sized hands rummaged
through his pockets. Immediately after the robbery, the victim saw the defendant with
Ms. Proctor and the gunman, running away and giggling. The direct and circumstantial
evidence indicates that the defendant was a participant in the aggravated robbery.
Although the defendant asserts that the victim's story is incredible, the jury resolved all
credibility issues with its verdict. As was its province, the jury believed that the victim
was robbed in the manner he recounted and that the evidence indicated that the defendant
participated in the robbery. The evidence is sufficient to sustain the defendant's
conviction.

## II. Exclusion of Testimony

During trial, defense counsel asked the victim if he was familiar with the victim's compensation fund. The prosecutor objected to the question as irrelevant, and the trial court sustained the objection. The defendant argues that trial court erred in excluding testimony about the victim's compensation fund, asserting that the "obvious purpose of the question was to show a bias on the part of the [victim] in showing that he had a pecuniary interest in the outcome of the case, i.e. that he wanted to receive compensation from the state victim's compensation fund." The State asserts that the defendant has waived this complaint because he abandoned the line of questioning without making an offer of proof.

We agree with the State that the defendant has waived this issue for failing to respond to the trial court's ruling or attempt to make an offer of proof to demonstrate that the answer to his question would lead to relevant or admissible evidence. This court has previously found waiver where the trial court excluded victim testimony about the compensation fund as not relevant, and the defendant did not respond to the objection or attempt to make an offer of proof. See State v. Larry Edward Moore, Jr., No. M2008-00703-CCA-R3-CD, 2010 WL 457493, at *7-8 (Tenn. Crim. App. Feb. 10, 2010), aff'd on remand by State v. Moore, 376 S.W.3d 108 (Tenn. Crim. App. 2011).

Moreover, the defendant is not entitled to relief under the plain error doctrine, which provides that where necessary to do substantial justice, an appellate court may take notice of a "plain error" not raised at trial if it affected a substantial right of the defendant. Tenn. R. Crim. P. 36(b). In order for us to find plain error: (a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is "'necessary to do substantial justice.'" State v. Smith, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). The presence of all five factors must be established by the record before we will recognize the existence of plain error, and complete consideration of all the factors is not necessary when it is clear from the record that at least one factor cannot be established. Id. at 283.

Here, the adverse effect of a substantial right of the defendant is not present because there was no offer of proof as to the excluded portion of the victim's testimony. "Without knowing what the excluded testimony would have been, we cannot determine whether any right of the accused was adversely affected." State v. Mack Tremaine Jones, No. W2005-00014-CCA-R3-CD, 2007 WL 1840798, at *12 (Tenn. Crim. App. June 27, 2007), perm. app. denied (Tenn. Oct. 15, 2007). The first factor is also not present

because, although the transcript technically shows what happened, "without the offer of proof, the record does not and cannot completely establish what occurred in the trial court because the disputed evidence is non-existent." Id.

## **CONCLUSION**

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE