IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 28, 2018

**LARRY EDWARD MOORE, JR. v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2007-A-514      Monte Watkins, Judge**

_____

**No. M2017-00903-CCA-R3-PC**

_____

Larry Edward Moore, the Petitioner, was convicted of carjacking. The Petitioner filed a petition for post-conviction relief, challenging his Davidson County Criminal Court conviction for carjacking. Following a hearing, the post-conviction court denied relief. On appeal, the Petitioner asserts that: (1) the trial court erred in denying his request to instruct the jury that unauthorized use of a motor vehicle was a lesser-included offense of carjacking; (2) trial counsel's performance was deficient for failing to keep the Petitioner informed of his case and for failing to have an effective trial strategy; and (3) trial counsel's performance on appeal was deficient for failing to include the lesser-included instruction issue in the motion for new trial and on appeal. After a thorough review of the facts and applicable case law, we affirm the post-conviction court's denial of relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and J. ROSS DYER, JJ., joined.

Nathan D. Cate, Madison, Tennessee, for the appellant, Larry Edward Moore, Jr.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Glenn Funk, District Attorney General; and Deborah Housel and Kristin Kyle-Castelli, Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION

## I. Factual and Procedural History

In this court's first opinion in the Petitioner's direct appeal, we set out the following factual summary underlying the Petitioner's case:

> Alysia Blackburn, the victim, testified that on December 27, 2006, she went to a jewelry store on Gallatin Road at approximately 4:15 p.m. to inquire about adjusting a bracelet she had received as a birthday present the day before. The victim left the engine to her grey 1999 Nissan Altima running while she went into the store. From inside the store, the victim observed [the Petitioner] walk by and look at her vehicle, so she went outside, turned the engine off, and locked the vehicle. The victim returned to the store, and [the Petitioner] entered the business as she was talking to the store's owner, Howard Lane. [The Petitioner] asked Mr. Lane if he could use Mr. Lane's telephone to call his wife because his vehicle would not start. When [the Petitioner] was unsuccessful in reaching his wife, the victim asked [the Petitioner] if she could help, and [the Petitioner] responded, "Yeah." The victim and [the Petitioner] got into the victim's Altima, and [the Petitioner] directed her to drive to a house on Riverwood Drive. The victim said that [the Petitioner] told her that he "really appreciate[d] it." The victim stated that she was "just being nice" because she had previously been in a similar situation.

> The victim pulled into the driveway indicated by [the Petitioner] and began to feel uneasy. The victim stated that [the Petitioner] suddenly struck her several times in the face. The victim struggled with [the Petitioner] as he attempted to move from the passenger seat to the driver's seat. The victim reached for her purse in the backseat, and [the Petitioner] struck her again. The victim stated that she gave up at that point and ceased struggling. She got out of the Altima, and [the Petitioner] drove off.

> Eugene Skaggs came out of his house and asked the victim if she was all right. The victim said that she was crying, and she told Mr. Skaggs that [the Petitioner] had stolen her vehicle. The victim stated:

> > [a]nd they kept staring at me, and I'm like, "Is my face messed up?" And he was, like, "Yes, ma'am." So that really made me cry. And I knew that my family [was] going to be upset because I tried to help somebody out.

The victim said that Mr. Skaggs had trouble understanding her because her face was swollen. Mr. Skaggs called the police and the victim's family. The victim was transported to the hospital by ambulance, and the emergency technician was concerned that the victim's jaw was broken. The victim told police officers that [the Petitioner]'s vehicle was parked at the jewelry store. The victim also told them that her purse was in her vehicle, and it contained, among other items, $212, two cell phones, and a debit card.

The records for the victim's cell phone were introduced as an exhibit at trial and showed that an outbound call was made with the victim's cell phone at 5:22 p.m. on December 27, 2006. The victim stated that she did not recognize the telephone number which received the call. The victim said that she identified [the Petitioner] as the perpetrator from a photographic lineup on December 27, 2006.

The victim stated that her jaw was not broken, but her face was bruised and swollen for approximately one and one-half weeks, and people had difficulty understanding her when she tried to speak. The victim said that she never recovered her Altima or any of the items in the vehicle. The victim stated that she did not give [the Petitioner] permission to take her vehicle.

On cross-examination, the victim acknowledged that she did not tell the investigating officers that she observed [the Petitioner] looking at her vehicle before he entered the store. The victim stated that she did not report the theft of the credit cards to her bank and acknowledged that she was never notified that the credit cards had been used. The victim said that [the Petitioner] told Mr. Lane that the alternator on his vehicle was not working, and Mr. Lane and [the Petitioner] discussed the location of the nearest car parts store. The victim acknowledged that [the Petitioner] did not make any threatening remarks on the drive to Riverwood Drive, and she described him as "nice."

Mr. Skaggs testified that he lived at 1140 Riverwood Drive. Mr. Skaggs stated that he was working at his computer on December 27, 2006, when he noticed on his computer screen the reflection of a vehicle pulling into his driveway. Mr. Skaggs did not recognize the vehicle and thought the driver would turn around. Mr. Skaggs observed a man and woman in the vehicle and believed at first that the man was slapping the woman

playfully. Mr. Skaggs then realized that the man was striking the woman, and he went outside. Mr. Skaggs said that the man got out of the vehicle and pulled the victim out. The man then got back in the vehicle and drove off. Mr. Skaggs said that he gave the victim ice for her face and called 911. Mr. Skaggs stated that he was unable to identify the man who drove off in the victim's vehicle.

Howard Lane testified that he owned a jewelry store on Gallatin Road. Mr. Lane knew the victim because she had visited the store before the incident. Mr. Lane said that the victim stopped by the store on December 27, 2006, to check on a bracelet's repair. Mr. Lane said that [the Petitioner] entered the store while he was talking to the victim and asked to use Mr. Lane's telephone because his vehicle would not start. Mr. Lane handed [the Petitioner] his cell phone, but [the Petitioner] was not able to reach anyone. Mr. Lane described [the Petitioner] as "cordial," and he, the victim, and [the Petitioner] conversed between ten and fifteen minutes. Mr. Lane said that the victim did not have any injuries to her face while she was in the store. Mr. Lane later identified [the Petitioner] from a photographic lineup as the man who left his store with the victim on December 27, 2006.

Officer Jason L. Smith, with the Metro Nashville Police Department, stated that the victim was "crying and very afraid" when he arrived at the residence on Riverwood Drive. Officer Smith observed a contusion on the victim's cheek which was bleeding. Based on the information provided by the victim and Mr. Skaggs, Officer Smith drove to the jewelry store on Gallatin Road. He located a van matching the victim's description and recorded the vehicle's VIN, which he relayed to Detective Michael Windsor with the Metro Police Department. On cross-examination, Officer Smith acknowledged that on his incident report, he indicated that the victim had sustained an "apparent minor injury."

Detective Windsor interviewed the victim at the hospital. Detective Windsor testified that the victim had a large amount of swelling around her cheek and a small laceration in the middle of the swelling. Detective Windsor identified the owner of the van parked near Mr. Lane's jewelry store through its VIN. Detective Windsor developed [the Petitioner] as a suspect based on the information received from the vehicle's owner. Detective Windsor prepared a photographic line-up, and the victim identified [the Petitioner] as the perpetrator.

- 4 -

Detective Windsor arrested [the Petitioner] on December 28, 2006. [The Petitioner] was read his *Miranda* rights and executed a written waiver of those rights. A redacted version of the videotape of [the Petitioner]'s interview was played for the jury. Detective Windsor stated that he determined that the outbound call made by the victim's cell phone on December 27, 2006, at 5:22 p.m. was made to [the Petitioner]'s home telephone number.

*State v. Larry Edward Moore, Jr.*, No. M2008-00703-CCA-R3-CD, 2010 WL 457493, at *1-3 (Tenn. Crim. App. Feb. 10, 2010), *perm. app. granted* (Tenn. Oct. 15, 2010). This court affirmed the trial court's judgment. *Id.* at *15. The Tennessee Supreme Court granted the Petitioner's Tennessee Rule of Appellate Procedure 11 application to appeal, ordered that the record be supplemented with a DVD of the Petitioner's statement to police, and remanded the case back to this court. *State v. Larry Edward Moore, Jr.*, M2008-00703-SC-R11-CD (Tenn. Oct. 15, 2010) (order granting Rule 11 application and remanding case). This court again affirmed the trial court's judgment, and our supreme court denied further review. *State v. Moore*, 376 S.W.3d 108, 121 (Tenn. Crim. App. Nov. 16, 2011).

Thereafter, the Petitioner filed a timely petition for post-conviction relief. At the post-conviction hearing, the Petitioner testified that he met with trial counsel twice prior to trial. At these meetings, trial counsel did not discuss trial strategy with the Petitioner. However, the Petitioner testified that he discussed with lead trial counsel the possibility of requesting that the trial court instruct the jury on unauthorized use of a vehicle and assault as lesser-included offenses of carjacking. The State made a plea offer to the Petitioner prior to trial, which the Petitioner declined. The Petitioner stated that it was "totally up to [him] to take the offer[,]" and trial counsel did not advise on whether he should proceed to trial or accept the offer. The Petitioner testified that trial counsel advised him that the State had a strong case against him. The Petitioner noted that trial counsel did not file a pretrial motion to determine whether unauthorized use of a motor vehicle was a lesser-included offense of carjacking. He explained that the trial court ruled on the issue during trial and determined that it was not a lesser-included offense. The Petitioner asserted that trial counsel had no other trial strategy other than to request a jury instruction on unauthorized use of a motor vehicle as a lesser-included offense of carjacking.

The Petitioner testified that trial counsel consulted with him on which issues to include in his motion for new trial. He noted that the issue of whether unauthorized use of a motor vehicle was a lesser-included offense of carjacking was not included in his motion for new trial. The Petitioner stated that, if he had known that assault and the

unauthorized use of a motor vehicle would not be charged as lesser-included offenses of carjacking, he would have accepted the State's plea offer instead of proceeding to trial.

On cross-examination, the Petitioner agreed that, prior to trial, he had made bond and could have met with trial counsel at the Public Defender's Office. The Petitioner also agreed that trial counsel filed a motion to suppress evidence on his behalf. The Petitioner agreed that he discussed possible defenses with trial counsel, realized that no defense applied to his case, and decided to seek a conviction on a lesser-included offense. On redirect examination, the Petitioner testified that he was aware that, if he was convicted of the offense as charged, he would possibly receive a sentence of thirty years. He chose to proceed to trial because he believed that unauthorized use of a motor vehicle and assault had been established as lesser-included offenses of carjacking. On recross-examination, the Petitioner agreed that he had an extensive criminal record and was a career offender. He also agreed that he was aware that the State had a strong case against him, but he decided to proceed to trial regardless.

Lead trial counsel testified that she and co-counsel had trouble communicating with the Petitioner throughout their representation. Lead trial counsel and co-counsel "sent out many methods of trying to get ahold of [the Petitioner]" because the trial court had indicated to them that the Petitioner's case was set for trial. Finally, the Petitioner called the Public Defender's Office and left a phone number. Despite the lack of communication from the Petitioner, lead trial counsel and co-counsel had prepared his case for trial. Their initial strategy was to negotiate a plea bargain with the State. Lead trial counsel reviewed the Petitioner's criminal record and determined that he was a career offender. Lead trial counsel also employed an investigator, who was "actively researching and looking through all the facts in the case." Closer to the Petitioner's trial date, lead trial counsel and co-counsel developed a trial strategy of arguing that the Petitioner's conduct did not qualify as a carjacking. Lead trial counsel based this argument on the fact that the victim willingly gave the Petitioner a ride, so the Petitioner did not take the vehicle by force. Lead trial counsel hoped that the Petitioner would be convicted of one of the lesser-included offenses of carjacking. Lead trial counsel noted that she filed a written motion requesting that the trial court instruct on various lesser-included offenses at trial. Lead trial counsel stated the following:

> And Judge took under advisement the issue of whether or not he could get a lesser of Joyriding, and we pestered him pretty much continuously at every break to bring it up again. And then we filed a written sort of memo of law and provided him with three cases explaining why we could get a Joyriding.

With regard to the Assault, I read it yesterday and I don't remember exactly how it went down, but to suggest that we weren't advocating wildly for what we knew to be right, because we always research the law before we go to trial, would be not true. I mean I definitely did not want [the Petitioner] to go down for thirty years.

Lead trial counsel explained that, even if the trial court declined to instruct the jury that assault was a lesser-included offense of carjacking, she "could explain why this wasn't a carjacking to the jury because he didn't take the car." The trial court ultimately ruled that assault and unauthorized use of a motor vehicle were not lesser-included offenses of carjacking. Lead trial counsel also argued to the jury that the stories of the State's witnesses "didn't match up[,]" and thus, the State had not proven guilt beyond a reasonable doubt. Regarding the issue of whether carjacking had any lesser-included offenses, lead trial counsel stated that she conducted extensive research and found three cases that related to the issue. Regarding the Petitioner's motion for new trial, lead trial counsel stated that she and co-counsel did not raise the issue of whether unauthorized use of a motor vehicle was a lesser-included offense of carjacking.

On cross-examination, lead trial counsel recalled that she discussed with the Petitioner that the State had a strong case against him, as well as different trial strategies and possible defenses. She stated that she and co-counsel did everything that they could in their representation of the Petitioner. Lead trial counsel noted that the Petitioner's sentence was mandated by statute, which she discussed with the Petitioner prior to trial. Lead trial counsel explained that her investigators researched the facts of the case, spoke with witnesses, and reviewed discovery. Lead trial counsel noted that the trial court instructed the jury that attempted carjacking was a lesser-included offense of carjacking, the offense for which the Petitioner was ultimately convicted.

The post-conviction court denied relief to the Petitioner. In its order, the post-conviction court found that the Petitioner "was advised on the strengths and weaknesses of the case" and "was advised of likelihood of conviction and the range of punishment." The post-conviction court also found that "[lead] trial counsel discussed [the] unauthorized use [of a motor vehicle] instruction with the [P]etitioner, filed a request for [a] lesser[-]included instruction on unauthorized use [of a motor vehicle] and assault with the [trial] [c]ourt . . . and that the [trial] [c]ourt found that evidence did not support an instruction on unauthorized use [of a motor vehicle] or assault." The post-conviction court concluded that the Petitioner had failed to establish that he was prejudiced by lead trial counsel's performance.

The Petitioner now timely appeals the post-conviction court's denial of relief.

## II. Analysis

In order to prevail on a petition for post-conviction relief, a petitioner must prove all factual allegations by clear and convincing evidence. *Jaco v. State*, 120 S.W.3d 828, 830 (Tenn. 2003). Post-conviction relief cases often present mixed questions of law and fact. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). Appellate courts are bound by the post-conviction court's factual findings unless the evidence preponderates against such findings. *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015). When reviewing the post-conviction court's factual findings, this court does not reweigh the evidence or substitute its own inferences for those drawn by the post-conviction court. *Id.*; *Fields*, 40 S.W.3d at 456 (citing *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the [post-conviction court]." *Fields*, 40 S.W.3d at 456 (citing *Henley*, 960 S.W.2d at 579); *see also Kendrick*, 454 S.W.3d at 457. The trial court's conclusions of law and application of the law to factual findings are reviewed de novo with no presumption of correctness. *Kendrick*, 454 S.W.3d at 457.

### *Trial court's failure to instruct on a lesser-included offense*

The Petitioner argues that the trial court erred by failing to instruct the jury that unauthorized use of a motor vehicle was a lesser-included offense of carjacking. The State contends that the trial court properly denied the Petitioner's request to issue this instruction because, although unauthorized use of a motor vehicle is a lesser-included offense of carjacking, the evidence at trial did not warrant the requested instruction because the Petitioner took Ms. Blackburn's vehicle through force and intimidation.

Tennessee Code Annotated section 40-30-106(g) states the following:

> (g) A ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented unless:
>
>> (1) The claim for relief is based upon a constitutional right not recognized as existing at the time of trial if either the federal or state constitution requires retroactive application of that right; or
>>
>> (2) The failure to present the ground was the result of state action in violation of the federal or state constitution.

Tenn. Code Ann. § 40-30-106(g).

We note that the Petitioner could have presented this issue in his motion for new trial and on direct appeal. Moreover, the issue is not based on a newly-recognized constitutional right, and the Petitioner's failure to present the issue in his motion for new trial and on direct appeal was not the result of state action. Thus, we conclude the Petitioner has waived this ground of relief. *See State v. Townes*, 56 S.W.3d 30, 35-36 (Tenn. Crim. App. 2000) (concluding that the petitioner's issues regarding the trial court's failure to instruct were waived because the issues were not raised on direct appeal), *overruled on other grounds by State v. Terry*, 118 S.W.3d 355, 359 (Tenn. 2003).

### *Ineffective assistance of counsel*

The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. In order to receive post-conviction relief for ineffective assistance of counsel, a petitioner must prove: (1) that counsel's performance was deficient; and (2) that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (stating that the same standard for ineffective assistance of counsel applies in both federal and Tennessee cases). Both factors must be proven in order for the court to grant post-conviction relief. *Strickland*, 466 U.S. at 687; *Henley*, 960 S.W.2d at 580; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Accordingly, if we determine that either factor is not satisfied, there is no need to consider the other factor. *Finch v. State*, 226 S.W.3d 307, 316 (Tenn. 2007) (citing *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004)). Additionally, review of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689; *see also Henley*, 960 S.W.2d at 579. We will not second-guess a reasonable trial strategy, and we will not grant relief based on a sound, yet ultimately unsuccessful, tactical decision. *Granderson v. State*, 197 S.W.3d 782, 790 (Tenn. Crim. App. 2006).

As to the first prong of the *Strickland* analysis, "counsel's performance is effective if the advice given or the services rendered are within the range of competence demanded of attorneys in criminal cases." *Henley*, 960 S.W.2d at 579 (citing *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)); *see also Goad*, 938 S.W.2d at 369. In order to prove that counsel was deficient, the petitioner must demonstrate "that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad*, 938 S.W.2d at 369 (citing *Strickland*, 466 U.S. at 688); *see also Baxter*, 523 S.W.2d at 936.

Even if counsel's performance is deficient, the deficiency must have resulted in prejudice to the defense. *Goad*, 938 S.W.2d at 370. Therefore, under the second prong of the *Strickland* analysis, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quoting *Strickland*, 466 U.S. at 694) (internal quotation marks omitted).

*Failure to properly inform the Petitioner regarding his case*

The Petitioner asserts that trial counsel was ineffective for failing to craft an effective trial strategy and inform the Petitioner regarding his case. The Petitioner maintains that trial counsel's trial strategy "involved fighting for a lesser[-]included offense" of assault, which he asserts was not a lesser-included offense of his charged offense. He argues that, absent this deficient performance, he would have chosen to enter a plea instead of proceeding to trial.

Lead trial counsel testified that, despite her difficulty in communicating with the Petitioner, she developed trial strategies for the Petitioner's case. Lead trial counsel initially focused on negotiating a plea with the State. Later, lead trial counsel and co-counsel developed a trial strategy of arguing that the Petitioner's conduct did not qualify as a carjacking. Lead trial counsel based this argument on the fact that the victim willingly gave the Petitioner a ride, so the Petitioner did not take the vehicle by force. Lead trial counsel hoped that the Petitioner would be convicted of one of the lesser-included offenses of carjacking. Lead trial counsel filed a motion asking the trial court to instruct the jury on assault and unauthorized use of a motor vehicle as lesser-included offenses of carjacking. The trial court denied the motion, but lead trial counsel stated that she "explain[ed] why this wasn't a carjacking to the jury because he didn't take the car." As noted above, the post-conviction court found that "[lead] trial counsel discussed [the] unauthorized use [of a motor vehicle] instruction with the [P]etitioner, filed a request for [a] lesser[-]included instruction on unauthorized use [of a motor vehicle] and assault with the [trial] [c]ourt . . . and that the [trial] [c]ourt found that evidence did not support an instruction on unauthorized use [of a motor vehicle] or assault."

We conclude that lead trial counsel's development of a trial strategy based on seeking a conviction of lesser-included offenses of unauthorized use of a motor vehicle and assault was not deficient performance. While lead trial counsel was unable to convince the trial court to instruct the jury that assault and unauthorized use of a motor vehicle were lesser-included offenses of carjacking based on the facts of the case, lead trial counsel still argued the theory to the jury. We will not grant relief based on "a

- 10 -

sound, yet ultimately unsuccessful, tactical decision." *Granderson*, 197 S.W.3d at 790. The Petitioner is not entitled to relief on this ground.

*Failure to raise issue on appeal*

The Petitioner asserts that he received ineffective assistance of counsel from lead trial counsel due to lead trial counsel's failure to "address in the motion for new trial and failed to argue on appeal that unauthorized use of a motor vehicle is a lesser[-]included offense of carjacking." The Petitioner argues that, absent trial counsel's deficient performance, this court would have remanded the case for a new trial on direct appeal.

At the post-conviction hearing, lead trial counsel admitted that she did not raise the issue of whether unauthorized use of a motor vehicle was a lesser-included offense of carjacking in the Petitioner's motion for new trial.

Pursuant to Tennessee Code Annotated section 40-18-110(f), an offense is a lesser-included offense if "[a]ll of its statutory elements are included within the statutory elements of the offense charged[.]" Tenn. Code Ann. § 40-18-110(f) (2012). If "a lesser[-]offense is included in the charged offense, the question remains whether the evidence justifies a jury instruction on such lesser offense." *State v. Burns*, 6 S.W.3d 453, 467 (Tenn. 1999). Tennessee Code Annotated section 40-18-110(a) provides, in part, that "the trial judge shall not instruct the jury as to any lesser[-]included offense unless the judge determines that the record contains any evidence which reasonable minds could accept as to the lesser[-]included offense" and that "[t]he trial judge shall also determine whether the evidence, viewed in this light, is legally sufficient to support a conviction for the lesser included offense." Tenn. Code Ann. § 40-18-110(a). Generally, evidence that is sufficient to support an instruction on the greater offense will also support an instruction on the lesser-included offense under Tennessee Code Annotated section 40-18-110(f)(1). *State v. Banks*, 271 S.W.3d 90, 125 (Tenn. 2008).

Carjacking is defined as "the intentional or knowing taking of a motor vehicle from the possession of another by use of[]" a "deadly weapon" or "[f]orce or intimidation." Tenn. Code Ann. § 39-13-404(a). A person commits the unauthorized use of a motor vehicle when he "takes another's automobile, airplane, motorcycle, bicycle, boat or other vehicle without the consent of the owner and the person does not have the intent to deprive the owner thereof." Tenn. Code Ann. § 39-14-106. This court has previously held that unauthorized use of a motor vehicle is a lesser-included offense of carjacking. *State v. Troy Ector*, No. W2011-02039-CCA-R3-CD, 2012 WL 3201985, at *8 (Tenn. Crim. App. Aug. 8, 2012), *perm. app. denied* (Tenn. Jan. 14, 2013); *State v. Donald Bradley Williams*, No. M2008-00176-CCA-R3-CD, 2009 WL 1643444, at *1 (Tenn. Crim. App. June 12, 2009), *no perm. app. filed*.

- 11 -

We conclude that lead trial counsel's failure to argue in the motion for new trial and on appeal that the trial court erred by declining to instruct the jury that unauthorized use of a motor vehicle was a lesser-included offense of carjacking was deficient performance. Lead trial counsel offered no explanation for failing to include this issue when she asserted that she presented the trial court with several cases that held that unauthorized use of a motor vehicle was a lesser-included offense of carjacking. However, we conclude that the Petitioner did not suffer any prejudice from lead trial counsel's deficient performance because there is not a reasonable probability that, but for this deficient performance, the Petitioner's motion for new trial would have been granted or he would have been granted relief on appeal. Here, the victim presented evidence that the Petitioner "suddenly struck her several times in the face[,]" struggled with the victim, and then struck her again. Because there was evidence that the Petitioner intentionally or knowingly took the victim's vehicle through the use of force, there is no reasonable probability that the Petitioner would have received relief on this ground in his motion for new trial or on appeal. *See Moore v. State*, 485 S.W.3d 411, 423-24 (Tenn. 2016) (holding that the petitioner was not prejudiced by trial counsel's failure to request jury instructions on lesser-included offenses when "[o]verwhelming evidence" showed that the petitioner committed the greater offense). The Petitioner is not entitled to relief on this ground.

### III. Conclusion

Based on the aforementioned reasons, we affirm the post-conviction court's denial of relief.

_____
ROBERT L. HOLLOWAY, JR., JUDGE